**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| **WILLIAM R. MATTHEWS, JR.**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**SURGICAL CARE AFFILIATES, LLC,** a Delaware limited liability company,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No. 2:26-cv-2380** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, WILLIAM R. MATTHEWS, JR. ("MATTHEWS" or "Plaintiff"), by and through undersigned counsel, and sues Defendant, SURGICAL CARE AFFILIATES, LLC ("SCA" or "Defendant"), and states as follows:

## CAUSES OF ACTION

1. This is an action brought under the Family and Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act ("FCRA"), and Florida's Private Sector Whistleblower Act ("FWA") for: (1) interference in violation of the FMLA; (2) retaliation in violation of the FMLA; (3) sex discrimination in violation of Title VII; (4) sex

discrimination in violation of the FCRA; (5) retaliation in violation of Title VII; (6) retaliation in violation of the FCRA; and (7) retaliation in violation of the FWA.

## PARTIES

2. Plaintiff, WILLIAM R. MATTHEWS, JR., is an individual and resident of Florida who, at all material times, worked for Defendant in Lee County, Florida.

3. Defendant, SURGICAL CARE AFFILIATES, LLC, is a foreign limited liability company authorized to conduct business in Florida, with its principal address and mailing address at 569 Brookwood Village, Suite 901, Birmingham, Alabama 35209. The Florida Division of Corporations lists SURGICAL CARE AFFILIATES, LLC as a Foreign Limited Liability Company, Document Number M07000003828, FEI/EIN 20-8922307, filed on June 22, 2007, with an active status, Delaware as its state of formation, and principal and mailing addresses at 569 Brookwood Village, Suite 901, Birmingham, Alabama 35209.

4. Defendant was Plaintiff's employer at all material times. Defendant's EEOC position statement identifies Surgical Care Affiliates, LLC as Matthews' employer and states that SCA provides outpatient surgical services.

5. Defendant employed the number of employees required for coverage under the FMLA, Title VII, FCRA, and FWA. Defendant's EEOC position

statement describes SCA as a nationwide outpatient surgery provider with a workforce that includes physicians, nurses, administration, finance, and operations employees.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

7. Venue is proper in the United States District Court for the Middle District of Florida because Plaintiff worked in Lee County, Florida, Defendant conducted business in Lee County, Florida, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida. Defendant's termination letter identifies Trails Edge Surgery Center as located at 28930 Trails Edge Blvd., Bonita Springs, Florida 34134.

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

9. Plaintiff received his Notice of Right to Sue on or about May 29, 2026, and this Complaint is timely filed within ninety days of receipt. The EEOC Determination and Notice of Rights for Charge No. 510-2026-03636 was issued to William Matthews on May 29, 2026.

10. Plaintiff has exhausted all administrative prerequisites for his Title VII and FCRA claims.

## GENERAL ALLEGATIONS

11. Plaintiff first began employment with SCA in July 2021 as a full-time Materials Manager in Orange, California.

12. On August 1, 2023, Defendant offered Plaintiff the position of Materials Manager, Physicians Day Surgery Center, reporting to Robyn Wright, CEO, based in Naples, Florida, with a starting date of October 2, 2023, a starting annual salary of $106,169.86, and an offer letter identifying his position as "Materials Manager - Physicians Day Surgery Center" and stating that the offer letter, if accepted, would be the entire agreement and would supersede all prior written or oral agreements, discussions, understandings, and proposals relating to his employment with SCA.

13. A November 30, 2025 recommendation letter from Dr. Phillip J. Richardson states that Plaintiff managed a regional spend/budget of $120.2 million per year, led cost-savings initiatives resulting in approximately $963,000 in savings for specific centers, and improved inventory management efficiency at La Veta Surgery Center, contributing to a 26% cost saving on disposable medical equipment and implants between 2021 and 2022.

14. A recommendation letter from Renee Galvan states that Plaintiff consistently demonstrated leadership, operational expertise, and commitment to supporting high-quality patient care as a Materials Manager, and that

Plaintiff's forecasting, procurement, and inventory work ensured clinical teams were fully equipped to deliver safe and efficient care.

15. In April 2024, Plaintiff's wife suffered a miscarriage, and Plaintiff sought leave and/or protection related to his spouse's serious health condition. On April 10, 2024, Plaintiff emailed Cathy Mark that he attended an ultrasound appointment with his wife and learned that they "unfortunately lost our unborn child," that PTO had been deducted from his time card, and that he filed a Sedgwick claim.

16. Sedgwick documentation dated April 17, 2024 identifies "FMLA for Matthews, William - Family Leave for Spouse - Jessica Matthews - Claim# 4A24049KBNX0001CI."

17. Defendant acknowledges that Plaintiff commenced paternity leave on March 1, 2025.

18. On April 28, 2025, immediately after Plaintiff returned from paternity leave, Megan Steed emailed Plaintiff that his role would be established as Materials Manager over Trails Edge only and that his new annual salary would be $72,800 effective May 12, 2025.

19. Plaintiff's August 1, 2023 offer letter provided an annual salary of $106,169.86. The April 28, 2025 email reduced Plaintiff's annual salary to $72,800.

20. The April 28, 2025 email also attached a new list of Trails Edge Materials Manager responsibilities, including ordering, receiving, inventory management, vendor notification, contract review, acting as courier for supplies and instruments, daily schedule review, stocking operating rooms, and other duties as assigned.

21. Plaintiff disputed that after returning from paternity leave he was handed new responsibilities without training or updated written expectations, and he asserted that expectations shifted multiple times after the April 28, 2025 change.

22. Plaintiff further disputed the Performance Action Notice, stating that concerns arose after his paternity leave, miscarriage-related absence, reports of PTO discrepancies, concerns about operational waste and workplace culture, and anonymous reporting of misconduct within leadership.

23. On November 18, 2025, Plaintiff submitted a formal response to the Performance Action Notice, acknowledging receipt only and disputing the lack of progressive discipline, formal performance improvement plan, and clearly defined measurable goals.

24. Plaintiff's formal response stated that many cited items were routine operational emails that had not been presented as performance failures at the time.

25. On November 18, 2025, Plaintiff emailed HR representative Delilah Garza, copying Megan Steed, requesting HR review and oversight regarding potential retaliation related to recent discipline and changes in job responsibilities.

26. Plaintiff wrote that since returning from paternity leave and later reporting concerns about PTO discrepancies, operational waste, and workplace conduct, he experienced increasing corrective action, shifting expectations, and changes to his duties without clear performance metrics or support.

27. Plaintiff expressly identified the FMLA, Title VII anti-retaliation protections, and the Florida Whistleblower Protection Act in his November 18, 2025 retaliation preservation notice.

28. Plaintiff requested that HR be included in all future discussions regarding his job performance, status, or employment.

29. On November 18, 2025, Delilah Garza responded that she appreciated Plaintiff sharing his concerns and wanted dedicated time to connect and continue the conversation.

30. On November 24, 2025, Plaintiff submitted a safety/security event report owned by William Matthews, entered November 24, 2025, identifying a “Safety Policy Violation.”

31. On November 26, 2025, Megan Steed emailed Plaintiff that his employment with SCA Health was terminated effective November 25, 2025.

32. Defendant's EEOC position statement admits that Plaintiff alleged discrimination because of sex and retaliation.

33. Defendant's position statement also admits that Plaintiff lodged a November 18, 2025 HR complaint alleging "potential retaliation" after reporting concerns regarding PTO discrepancies, operational waste, and workplace conduct.

34. At all material times, Defendant was aware of Plaintiff's protected leave, protected complaints, objections to unlawful practices, and protected opposition to retaliation. Plaintiff's November 18, 2025 email expressly informed HR and Megan Steed of his concerns regarding retaliation, FMLA, Title VII anti-retaliation protections, and the Florida Whistleblower Protection Act.

35. Defendant's actions caused Plaintiff to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, damage to career trajectory, and other compensable losses.

## COUNT I - VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT: INTERFERENCE

36. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

37. Plaintiff was eligible for FMLA leave at all material times.

38. Defendant was an employer covered by the FMLA.

39. Plaintiff was entitled to FMLA leave to care for his spouse's serious health condition and/or for qualifying family leave. Sedgwick documentation identified Plaintiff's April 2024 claim as "FMLA for Matthews, William - Family Leave for Spouse - Jessica Matthews."

40. Plaintiff provided notice sufficient to inform Defendant of his need for FMLA-qualifying leave. Plaintiff emailed Cathy Mark that he filed a Sedgwick claim after PTO was deducted following the loss of his unborn child and his continued work during that period.

41. Defendant interfered with Plaintiff's FMLA rights by discouraging, penalizing, mischaracterizing, or failing to properly protect leave-related absences and by allowing leave-related events to be used against Plaintiff in subsequent employment actions.

42. Defendant's conduct interfered with, restrained, or denied Plaintiff's exercise of rights protected by the FMLA.

43. As a result of Defendant's FMLA interference, Plaintiff suffered damages including lost wages, lost benefits, and other monetary losses.

WHEREFORE, Plaintiff demands judgment against Defendant for all relief available under the FMLA, including lost wages, lost benefits, interest, liquidated damages, equitable relief, attorney's fees, costs, and all other relief this Court deems just and proper.

## COUNT II - VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT: RETALIATION

44. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

45. Plaintiff engaged in protected activity under the FMLA by requesting, taking, and/or invoking FMLA-protected leave.

46. Defendant acknowledges that Plaintiff commenced paternity leave on March 1, 2025.

47. When Plaintiff returned from paternity leave, Defendant reduced his annual salary to $72,800 effective May 12, 2025.

48. Plaintiff later complained to HR that since returning from paternity leave, he experienced increasing corrective action, shifting expectations, and changes to his duties without clear performance metrics or support.

49. Defendant took materially adverse actions against Plaintiff, including reducing his pay, changing his job responsibilities, issuing discipline, excluding him from fair process, and terminating his employment.

50. Defendant terminated Plaintiff's employment effective November 25, 2025.

51. A causal connection exists between Plaintiff's protected FMLA activity and Defendant's adverse employment actions.

52. Defendant retaliated against Plaintiff because he exercised rights protected by the FMLA.

53. Defendant's conduct was willful and intentional.

WHEREFORE, Plaintiff demands judgment against Defendant for all relief available under the FMLA, including lost wages, lost benefits, interest, liquidated damages, equitable relief, attorney's fees, costs, and all other relief this Court deems just and proper.

**COUNT III - VIOLATION OF TITLE VII: SEX DISCRIMINATION**

54. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

55. Plaintiff is male and, as such, is a member of a protected class.

56. Plaintiff was qualified for his position. Dr. Richardson's recommendation letter describes Plaintiff as a highly accomplished professional with experience achieving operational excellence and cost optimization in surgical environments. Ms. Galvan's recommendation letter states that Plaintiff demonstrated leadership, operational expertise, and accountability as a Materials Manager.

57. Defendant subjected Plaintiff to disparate treatment based on sex, including negative treatment following his paternity leave, pay reduction, shifting expectations, heightened scrutiny, discipline, and termination.

58. Defendant's EEOC position statement identifies Plaintiff's charge as alleging that he was discriminated against because of his sex.

59. Defendant's acts, failures to act, practices, and policies constitute intentional discrimination based on Plaintiff's sex in violation of Title VII.

60. As a direct and proximate result of Defendant's discrimination, Plaintiff suffered damages, including lost wages, lost benefits, humiliation, emotional distress, and damage to his career.

61. Plaintiff has exhausted his administrative remedies.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs, interest, and all other relief this Court deems just and proper.

**COUNT IV - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT: SEX DISCRIMINATION**

62. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

63. Plaintiff is male and, as such, is a member of a protected class.

64. Plaintiff was qualified for his position. Dr. Richardson stated that Plaintiff managed a $120.2 million annual regional spend/budget and delivered substantial cost savings.

65. Defendant subjected Plaintiff to disparate treatment based on sex, including negative treatment following paternity leave, shifting job expectations, discipline, and termination.

66. Defendant's acts, failures to act, practices, and policies constitute intentional discrimination based on Plaintiff's sex in violation of the FCRA.

67. As a direct and proximate result of Defendant's discrimination, Plaintiff suffered damages.

68. Plaintiff has exhausted his administrative remedies.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages where available, attorney's fees, costs, interest, and all other relief this Court deems just and proper.

## COUNT V - VIOLATION OF TITLE VII: RETALIATION

69. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

70. Plaintiff engaged in protected activity by complaining about discrimination, retaliation, and workplace conduct protected by Title VII.

71. On November 18, 2025, Plaintiff informed HR and Megan Steed that he was concerned about retaliation in violation of Title VII anti-retaliation protections.

72. Plaintiff requested that HR be included in future discussions regarding his job performance, status, or employment.

73. Defendant knew Plaintiff engaged in protected activity. HR responded to Plaintiff's retaliation preservation notice on November 18, 2025 and stated that HR wanted dedicated time to connect and continue the conversation.

74. Defendant took materially adverse action against Plaintiff after his protected activity.

75. Defendant terminated Plaintiff's employment effective November 25, 2025, seven days after his November 18, 2025 retaliation preservation notice.

76. Defendant retaliated against Plaintiff because he engaged in protected activity.

77. Defendant's conduct violated Title VII.

78. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

79. Plaintiff has exhausted his administrative remedies.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs, interest, and all other relief this Court deems just and proper.

## COUNT VI - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT: RETALIATION

80. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

81. Plaintiff engaged in protected activity by opposing discrimination and retaliation.

82. Plaintiff's November 18, 2025 email complained that recent disciplinary action appeared directly connected in timing to protected activities.

83. Defendant knew of Plaintiff's protected activity.

84. Defendant retaliated against Plaintiff by subjecting him to heightened scrutiny, excluding him from fair process, refusing to meaningfully address his complaint, sending him home, and terminating his employment.

85. Defendant's termination letter states that Plaintiff's employment was terminated effective November 25, 2025.

86. Defendant's conduct violated the FCRA.

87. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

88. Plaintiff has exhausted his administrative remedies.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages where available,

attorney's fees, costs, interest, and all other relief this Court deems just and proper.

**COUNT VII - VIOLATION OF FLORIDA'S PRIVATE SECTOR WHISTLEBLOWER ACT**

89. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

90. Plaintiff was an employee of Defendant, a private employer.

91. Florida's Private Sector Whistleblower Act protects employees from retaliatory personnel action for objecting to or refusing to participate in an employer activity, policy, or practice that violates a law, rule, or regulation.

92. Plaintiff engaged in protected activity by reporting, objecting to, and refusing to ignore unlawful or unsafe practices, including operational waste, workplace conduct, PTO discrepancies, and patient-safety concerns.

93. Plaintiff's November 18, 2025 notice reported concerns about PTO discrepancies, operational waste, workplace conduct, and retaliation under the Florida Whistleblower Protection Act.

94. On November 24, 2025, Plaintiff submitted a safety/security event report identifying a Safety Policy Violation.

95. Defendant knew Plaintiff engaged in protected whistleblower activity. Plaintiff copied Megan Steed on his November 18, 2025 retaliation preservation notice to HR.

96. Defendant took retaliatory personnel action against Plaintiff.

97. On November 26, 2025, Defendant emailed Plaintiff that his employment was terminated effective November 25, 2025.

98. Plaintiff's protected activity and Defendant's retaliatory personnel actions were causally related.

99. As a direct and proximate result of Defendant's violation of the FWA, Plaintiff lost wages, benefits, and other remuneration and suffered additional compensable damages.

WHEREFORE, Plaintiff demands judgment against Defendant for all relief available under Florida's Private Sector Whistleblower Act, including reinstatement or front pay, lost wages, lost benefits, compensatory damages, attorney's fees, costs, and all other relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury under Federal Rule of Civil Procedure 38 on all issues so triable.

Respectfully submitted,

Dated: August 17, 2026

**s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134

Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com